**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 10-80241-CIV-ZLOCH/ROSENBAUM

GREAT LAKES TRANSPORTATION
HOLDING LLC d/b/a METRO CARS,

      Plaintiff,

v.

YELLOW CAB SERVICE CORPORATION
OF FLORIDA, INC., et al.,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO COMPEL

This matter is before the Court on Defendants' Corrected Motion to Overrule Objections and Compel Better Responses to Request for Production ("Defendants' Motion to Compel") [D.E. 53], pursuant to an Order of Referral from the Honorable William J. Zloch [D.E. 68]. The Court has reviewed the Motion and the Response, as well as the case file, and has heard oral argument from counsel at a hearing held on December 1, 2010. The Court announced its rulings on the Motion during the hearing, and this Order memorializes those rulings.

### Background

This case involves competing claims of trademark infringement and unfair competition between two groups of parties that provide chauffeured-car and other transportation services. Metro Cars, Inc., ("Metro") was a Michigan corporation formerly owned by Gregory Eaton and Cullan Meathe. Yellow Cab Service Corporation of Florida, Inc., ("Yellow Cab") is a Florida corporation owned by Meathe. Daniel Ret formerly served as the chief operating officer of both Metro and Yellow Cab.

Sometime in 2006, Metro and Yellow Cab executed a license agreement for the trademark *METRO CARS $_{FL}$* ("the Florida mark"). The agreement acknowledged that Metro owned the Florida mark and had applied for federal registration of that mark.[1] (Metro had also previously registered the trademark METRO CARS ("the Metro mark").) Further, the agreement granted Yellow Cab a perpetual license to use the Florida mark in connection with its chauffeured-car business in Florida. Under the agreement, Yellow Cab promised never to challenge Metro's rights in the Florida mark and that, upon termination of the agreement, Yellow Cab would immediately cease all use of the mark.

In August 2006, Metro and several related companies (collectively, "the debtors") granted the Bank of Montreal and two other banks (together, "the creditors") a security interest in the debtors' personal property, including all trademarks and other intellectual-property rights ("the collateral" or "Metro's assets"), to secure the payment of certain credit obligations. In June 2009, after the debtors defaulted on those obligations, the creditors exercised their post-default remedies and proceeded to sell the collateral at a public foreclosure sale. On July 13, 2009, Great Lakes Transportation Holding LLC ("Great Lakes"), a newly formed company owned by Eaton, Ret, and a third individual, purchased the collateral. The creditors subsequently transferred the rights to the collateral, including the Metro mark and the Florida mark, to Great Lakes.

Great Lakes later brought this action against Yellow Cab, Meathe, and several other Florida transportation companies owned by Meathe (collectively, "Defendants"). In its Complaint, Great Lakes alleges that it is the exclusive owner of the Metro mark and the Florida mark and that Defendants are using those marks illegally in connection with their competing transportation businesses. Great Lakes asserts federal claims for false designation of origin, *see* 15 U.S.C.A.

---

[1]The United States Patent and Trademark Office later granted the registration application.

§ 1125(a) (West 2009), trademark dilution, *see* 15 U.S.C.A. § 1125(c) (West 2009), and trademark infringement, *see* 15 U.S.C.A. § 1114 (West 2009); common-law claims for unfair competition and unjust enrichment; and a claim alleging violation of the Florida Deceptive and Unfair Trade Practices Act, *see* Fla. Stat. Ann. §§ 501.201–501.213 (West, Westlaw through 2010 2d Reg. Legis. Sess.). Great Lakes's Complaint seeks damages, injunctive relief, and other remedies.

In response to Great Lakes's claims, Defendants allege that they used the Florida mark in commerce before Great Lakes and its predecessor (Metro) did and therefore that Defendants are the true owners of the Florida mark. On that basis, Defendants assert several counterclaims and third-party claims against Great Lakes, Eaton, and Ret, focusing on the parties' competing use of the Florida mark and "a black box with yellow swoosh." D.E. 20 at 13. These claims are generally similar to the claims brought by Great Lakes. In addition, Defendants plead state-law claims alleging that Eaton, Ret, and other Metro agents acted illegally to deprive Meathe and the other Defendants of their interest in the Florida mark, in part by forming Great Lakes to purchase Metro's assets at the foreclosure sale.

During discovery, Defendants requested that Great Lakes, Eaton, and Ret (together, "Plaintiffs")[2] produce various documents. Although Plaintiffs objected to many of these requests, the parties resolved the objections for all but three of the requests.[3] Defendants now ask the Court to compel Plaintiffs to respond to those three requests.

---

[2]Eaton and Ret are third-party defendants rather than plaintiffs. For ease of reference, however, the Order refers collectively to Great Lakes, Eaton, and Ret as "Plaintiffs."

[3]Defendants' Motion states that Plaintiffs have also objected to Defendants' requests on grounds of the work-product doctrine and attorney-client privilege. The parties, however, have agreed to defer consideration of these objections until after certain confidentiality issues are resolved.

**Discussion**

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery.  That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Fed. R. Civ. P. 26(b) advisory committee notes (1946).  Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing' for evidence as they should." *Id.* (alteration in original) (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial.  Properly used, they prevent prejudicial surprises and conserve precious judicial energies.  The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[4] (citing *Hickman*, 329 U.S. at 507; *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)).

---

[4]In accordance with *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Of course, the scope of permissible discovery is not unbounded.  Requested discovery must be relevant, and it must not impose an undue burden or be unreasonably cumulative, under the standards described in Rule 26(b)(2)(C).  Finally, even if the discovery sought meets all these requirements, an opposing party generally may not be compelled to respond to it if that party invokes and demonstrates the applicability of an appropriate privilege or protection.

**Request for Production No. 8**

In Request for Production No. 8, Defendants ask for the following materials:

8.       Documents reflecting the use of the trade mark or service mark MetroCars, including but not limited to:

     a.      Advertising;

     b.      Contracts for advertising, including but not limited to:

         i.      Contracts for telephone listings;

         ii.      Contracts for construction of web pages or web sites;

         iii.      Contracts for magazine or periodical advertising;

         iv.      Contracts for station[e]ry or letterhead including the trade name or service mark MetroCars;

     c.      Invoices reflecting payment for advertising, including but not limited to:

         i.      Invoices reflecting payment for telephone listings;

         ii.      Invoices reflecting payment for construction of web pages or web sites;

         iii.      Invoices reflecting payment for magazine or periodical advertising;

         iv.      Invoices reflecting payment for station[e]ry or letterhead including the trade name or service mark MetroCars.

     d.      Cancelled checks reflecting payment for advertising, including but not limited to:

i.      Cancelled checks reflecting payment for telephone listings;

ii.     Cancelled checks reflecting payment for construction of web pages or web sites;

iii.    Cancelled checks reflecting payment for magazine or periodical advertising;

iv.    Cancelled checks reflecting payment for station[e]ry or letterhead including the trade name or service mark MetroCars.

D.E. 53-1 at 4-5.

Plaintiffs argue that this production request is overbroad because it seeks information about Plaintiffs' use of the Metro mark outside the State of Florida. Plaintiffs note that the disputed issues in this case focus on the parties' use, in Florida, of the Metro mark and Florida mark. But as Defendants point out, the claims asserted by Plaintiffs are based, at least in part, on their use of the Metro mark outside Florida. In particular, Plaintiffs rely on this alleged use to support their central theory that they own the Metro mark and therefore that Defendants are illegally using it. *See* D.E. 1 at 3-5 (complaint allegations); D.E. 48 at 3-6 (summary-judgment proffer). Defendants' production request asks for documents reflecting Plaintiffs' specific uses of the mark in commerce—facts relevant to determining whether, and when, Plaintiffs acquired and maintained ownership of the mark. Given the broad scope of discovery permitted under Rule 26(b), the Court finds that Defendants' request seeks relevant information. Accordingly, the Court grants Defendants' Motion to Compel with respect to Request for Production No. 8.[5]

Nevertheless, the Court recognizes Plaintiffs' concern that the requested documents may include proprietary or otherwise confidential business information. This concern applies to potential

---

[5]Plaintiffs also contend that the phrase "reflecting the use" in this request is vague and ambiguous. This phrase, however, is sufficiently clear in the context of the specific items listed.

disclosure of the documents both to the public and to Defendants, which are Plaintiffs' competitors. Because Defendant Meathe co-owned Metro, Defendants previously had access to responsive documents created on or before July 13, 2009, the date that Great Lakes purchased Metro's assets. Therefore, no competition concerns arise with regard to Defendants' review of pre-July 14, 2009, documents. After Plaintiffs produce those documents, Defendants shall use them for purposes of this litigation only and shall seal any of the documents filed with the Court (unless a later Court order requires otherwise). Any responsive documents created after July 13, 2009, however, were not previously available to Defendants and thus require greater protection. Besides the safeguards applicable to the pre-July 14, 2009, documents, the post-July 13, 2009, documents shall be viewed only by Defendants' attorneys and may also be used in the depositions of Plaintiffs or of their representatives, agents, or other witnesses on their behalf.

**Request for Production No. 11**

In Request for Production No. 11, Defendants seek "[d]ocuments reflecting the acquisition of the assets of Checker Sedan from Soave Enterprises Inc." D.E. 53-1 at 6. Plaintiffs object to this request on the ground that the information sought is irrelevant to this case. They emphasize that neither Checker Sedan nor Soave Enterprises is mentioned in the parties' pleadings.

The Court finds, however, that Defendants' production request is relevant to their counterclaims, third-party claims, and affirmative defenses alleging that Eaton and Ret conspired to deprive Meathe of his interest in Metro and the Florida mark, in violation of certain contractual and fiduciary duties. In addition to buying Metro's assets at the foreclosure sale, Eaton and Ret's newly formed company (Great Lakes) also purchased the assets of Checker Sedan, a transportation company owned by Soave Enterprises Inc. In their Motion and at the hearing, Defendants explained that their breach-of-duty and breach-of-noncompetition-agreement claims are based in part on Eaton

and Ret's separate negotiation to purchase Checker Sedan while Ret was allegedly working for Metro under a noncompetition agreement. If, in fact, these negotiations occurred while Ret was subject to a noncompetition agreement, such a fact would be relevant to Defendants' claims. Thus, Defendants' production request "appears reasonably calculated to lead to the discovery of admissible evidence" concerning the claims of improper conduct by Plaintiffs. Fed. R. Civ. P. 26(b)(1). Therefore, with respect to Request for Production No. 11, Defendants' Motion to Compel is granted.

**Request for Production No. 21**

Defendants, in Request for Production No. 21, ask for the following: "All documents supporting the impact in the use of transportation provided in the State of Florida by the Plaintiff by the use of MetroCars by the Defendant." D.E. 53-1 at 7. Plaintiffs object to this request, mainly on the ground that it is unclear what documents Defendants are seeking. In the Motion and at the hearing, Defendants explained that their production request concerns Plaintiffs' damages resulting from Defendants' alleged illegal use of the Metro mark. The request, Plaintiffs say, "merely seeks documentation supporting the Plaintiff's claim that it[s] transportation business in Florida has been impacted by the alleged improper use of the mark by the Defendants." D.E. 53 at 6.

The Court agrees with Plaintiffs that, as presently phrased, the meaning of Defendants' production request is unclear. Thus, the Court denies Defendants' Motion to Compel with respect to Request for Production No. 21. Defendants may, however, resubmit this request in a clarified form if they so wish.

## Conclusion

Accordingly, as set forth herein, Defendants' Corrected Motion to Overrule Objections and Compel Better Responses to Request for Production [D.E. 53] is **GRANTED IN PART** and **DENIED IN PART**. The documents responsive to Request for Production No. 8 shall be produced

in accordance with the confidentiality terms discussed above. Further, in view of Defendants' need to file a response to Plaintiffs' pending Motion for Summary Judgment by January 14, 2011, and to depose Plaintiffs before filing that response, it is hereby **ORDERED** that Plaintiffs shall produce documents responsive to Requests for Production Nos. 8 and 11 by **Wednesday, December 15, 2010,** provided that Plaintiffs are available for deposition before **5:00 p.m. on Friday, January 7, 2011.** If Plaintiffs are **not** available for deposition by that date, then Plaintiffs shall file a notice so advising the Court by **noon on Monday, December 6, 2010,** so that a different production schedule can be arranged.

       **DONE** and **ORDERED** at Fort Lauderdale, Florida this 3rd day of December, 2010.

                       ROBIN S. ROSENBAUM
                       United States Magistrate Judge

cc:     Honorable William J. Zloch
        counsel of record