UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80241-CIV-ZLOCH/ROSENBAUM

GREAT LAKES TRANSPORTATION
HOLDING LLC d/b/a METRO CARS,

    Plaintiff,

v.

YELLOW CAB SERVICE CORPORATION
OF FLORIDA, INC., et al.,

    Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on Plaintiff's Motion to Determine Sufficiency of Objections and to Compel Discovery Responses ("Plaintiff's Motion to Compel") [D.E. 63], referred to me by the Honorable William J. Zloch [D.E. 68]. The Court has reviewed the Motion, the Response, and the Reply, as well as the case file, and has heard oral argument from counsel at a hearing held on December 1, 2010. During the hearing, the Court announced rulings on some of the discovery requests at issue but deferred ruling on others. This Order memorializes the rulings made from the bench and sets forth rulings regarding the discovery requests on which the Court reserved decision.

### Background

This case involves competing claims of trademark infringement and unfair competition between two groups of parties that provide chauffeured-car and other transportation services. Metro Cars, Inc., ("Metro") was a Michigan corporation formerly owned by Gregory Eaton and Cullan Meathe. Yellow Cab Service Corporation of Florida, Inc., ("Yellow Cab") is a Florida corporation

owned by Meathe. Daniel Ret formerly served as the chief operating officer of both Metro and Yellow Cab.

Sometime in 2006, Metro and Yellow Cab executed a license agreement for the trademark METRO CARS $_{FL}$ ("the Florida mark"). The agreement acknowledged that Metro owned the Florida mark and had applied for federal registration of that mark.[1] (Metro had also previously registered the trademark METRO CARS ("the Metro mark").) Further, the agreement granted Yellow Cab a perpetual license to use the Florida mark in connection with its chauffeured-car business in Florida. Under the agreement, Yellow Cab promised never to challenge Metro's rights in the Florida mark and that, upon termination of the agreement, Yellow Cab would immediately cease all use of the mark. Though not reflected in the record before the Court, the parties apparently agree that the license agreement was later terminated.

In August 2006, Metro and several related companies (collectively, "the debtors") granted the Bank of Montreal and two other banks (together, "the creditors") a security interest in the debtors' personal property, including all trademarks and other intellectual-property rights ("the collateral" or "Metro's assets"), to secure the payment of certain credit obligations. In June 2009, after the debtors defaulted on those obligations, the creditors exercised their post-default remedies and proceeded to sell the collateral at a public foreclosure sale. On July 13, 2009, Great Lakes Transportation Holding LLC ("Great Lakes" or "Plaintiff"), a newly formed company owned by Eaton, Ret, and a third individual, purchased the collateral. The creditors subsequently transferred the rights to the collateral, including the Metro mark and the Florida mark, to Great Lakes.

Great Lakes later brought this action against Yellow Cab, Meathe, and several other Florida transportation companies owned by Meathe (collectively, "Defendants"). In its Complaint, Great

---

[1]The United States Patent and Trademark Office later granted the registration application.

Lakes alleges that it is the exclusive owner of the Metro mark and the Florida mark and that Defendants are using those marks illegally in connection with their competing transportation businesses. Great Lakes asserts federal claims for false designation of origin, *see* 15 U.S.C.A. § 1125(a) (West 2009), trademark dilution, *see* 15 U.S.C.A. § 1125(c) (West 2009), and trademark infringement, *see* 15 U.S.C.A. § 1114 (West 2009); common-law claims for unfair competition and unjust enrichment; and a claim alleging violation of the Florida Deceptive and Unfair Trade Practices Act, *see* Fla. Stat. Ann. §§ 501.201–501.213 (West, Westlaw through 2010 2d Reg. Legis. Sess.). Great Lakes's Complaint seeks damages, injunctive relief, and other remedies.

In response to Great Lakes's claims, Defendants allege that they used the Florida mark in commerce before Great Lakes and its predecessor (Metro) did and therefore that Defendants are the true owners of the Florida mark. On that basis, Defendants assert several counterclaims and third-party claims against Great Lakes, Eaton, and Ret, focusing on the parties' competing use of the Florida mark and "a black box with yellow swoosh." D.E. 20 at 13. These claims are generally similar to the claims brought by Great Lakes. In addition, Defendants plead state-law claims alleging that Eaton, Ret, and other Metro agents acted illegally to deprive Meathe and the other Defendants of their interest in the Florida mark, in part by forming Great Lakes to purchase Metro's assets at the foreclosure sale.

During discovery, Great Lakes asked Defendants to respond to various interrogatories and requests for production of documents. Defendants objected to many of the interrogatories and document-production requests. Although the parties have resolved some of these objections, Great Lakes now asks the Court to compel Defendants to respond to five interrogatories and twenty-six requests for production.

**Discussion**

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Fed. R. Civ. P. 26(b) advisory committee notes (1946). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing' for evidence as they should." *Id.* (alteration in original) (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[2] (citing *Hickman*, 329 U.S. at 507; *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)).

---

[2]In accordance with *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

4

Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose an undue burden or be unreasonably cumulative, under the standards described in Rule 26(b)(2)(C). Finally, even if the discovery sought meets all these requirements, an opposing party generally may not be compelled to respond to it if that party invokes and demonstrates the applicability of an appropriate privilege or protection.

The specific interrogatories and requests for production at issue here are discussed below. Where appropriate, the Court groups certain of the discovery requests for discussion.

**Interrogatory No. 8**

Interrogatory No. 8 asks Defendants to provide the following information: "For each category of goods and/or services you have sold under the [Metro and Florida marks], state by month and year the dollar amount of your sales." D.E. 64-1 at 9. Defendants object to this interrogatory, arguing mainly that any sales they made while the 2006 trademark-license agreement was in effect are irrelevant because Defendants had a right to use the disputed marks during that time. By contrast, Great Lakes asserts that the requested sales information is relevant to disputed issues in this case, including Defendants' alleged ownership of the Florida mark and the parties' claimed damages.

At the hearing, much of the dialogue between counsel and the Court focused on whether, depending on the validity of the license agreement, Defendants' sales information is relevant to claims for damages asserted by Great Lakes or by Defendants. The Court concludes, however, that regardless of whether Defendants' sales information is relevant to damages, that information is relevant to Defendants' alleged ownership of the Florida mark and, in particular, its use of that mark in commerce.

Defendants' affirmative defenses and counterclaims are based largely on the theory that Defendants started using the Florida mark in commerce well before August 15, 2005—the date that,

5

according to the trademark registration, Great Lakes's predecessor began using that mark. *See, e.g.*, D.E. 20 at 9 (alleging that "Defendants adopted the use of the mark 'Metro Cars FL' prior to August 15, 2005, and have used it continuously ever since"). In other words, aside from any use of the Florida mark that the license agreement later purported to allow, Defendants claim that they already owned that mark through prior use in commerce and maintained their ownership by continuing to use the mark. *See, e.g.*, *id.* at 13 (claiming that the Florida mark has "become the exclusive property of" Defendants based on their "exclusive prior and continuous use" of the mark); *id.* at 18 (alleging that Defendants "have used, promoted, and advertised" the Florida mark "for years" and thereby "have acquired substantial common law rights" in the mark). While Defendants argue that they have already produced information showing their various uses of the Florida mark, the requested sales information is relevant to a distinct aspect of Defendants' alleged commercial use, namely, the actual sales that they have generated using the mark. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001) (indicating that while a party may demonstrate ownership of a mark through use in commerce without proof of sales, "evidence of sales is highly persuasive" (internal quotation marks omitted)). Therefore, the Court grants Plaintiff's Motion to Compel with respect to Interrogatory No. 8.

**Interrogatories Nos. 19–21**

Interrogatories Nos. 19 through 21 request information regarding the 2009 foreclosure sale and the property involved in that sale. Specifically, Interrogatory No. 19 asks Defendants to "[s]tate in detail all facts relating to any offers by you to sell, pledge, license, or assign any property (intellectual or otherwise), which was purchased by the Plaintiff at a foreclosure sale in 2009." D.E. 64-1 at 13. Interrogatory No. 20 requests that Defendants "[s]tate in detail all facts relating to any defaults under any security agreements for which the collateral included any assets of Metro Group

6

Holding Companies, Inc.; Metro Cars, Inc.; Metro Transportation, LLC; and/or Metro Coach LLC." *Id.* Finally, Interrogatory No. 21 asks Defendants, "Did you receive notice of any sale at which the Bank of Montreal and/or Citizens First Savings Bank and/or Fifth Third Bank, as secured parties sought to sell certain collateral which was the subject of a 2006 Security Agreement? If so, when, and in what form did you receive the notice?" *Id.* at 14.

Defendants objected to these three interrogatories on the ground that the information they seek is irrelevant. At the hearing, however, Defendants withdrew their objections and agreed to respond to these interrogatories. The Court therefore grants Plaintiff's Motion to Compel as it regards Interrogatories Nos. 19 through 21.

**Interrogatory No. 22**

Interrogatory No. 22 asks Defendants to provide the following information:

> State in detail any actions which you took including, but not limited to, communications, and/or the formation of any joint venture or companies with any person(s) or entities, including, but not limited to, Dan Dickson and/or Jay Treadwell, and any action concerning or which refers or relates to the submission of bids by you or anyone else, with respect to any sale at which the Bank of Montreal and/or Citizens First Savings Bank and/or Fifth Third Bank, as secured parties, sought to sell certain collateral which was the subject of a 2006 Security Agreement.

D.E. 64-1 at 14. Defendants object to this interrogatory, arguing that any unsuccessful efforts by Defendants to purchase the collateral at the foreclosure sale are irrelevant to the issues in this case.

The Court agrees with Great Lakes, however, that this interrogatory seeks information relevant to Defendants' counterclaims, third-party claims, and affirmative defenses alleging that Eaton and Ret wrongfully deprived Meathe of his interest in Metro and the Florida mark, in part by forming Great Lakes to buy Metro's assets. *See, e.g.*, D.E. 20 at 7, 24 (alleging "fraud in the acquisition of" Metro). Evidence showing that Defendants tried to purchase these same assets at the

7

foreclosure sale could help Great Lakes refute Defendants' theory that Great Lakes, Eaton, and Ret acquired the assets through fraud and other illegal means. That evidence might instead suggest, for example, that Defendants were on a level playing field with Great Lakes but were simply outbid at the foreclosure sale. Thus, the Court grants Plaintiff's Motion to Compel with respect to Interrogatory No. 22.

**Requests for Production Nos. 1–7, 9, 43**

In Requests for Production Nos. 1 through 7, 9, and 43, Great Lakes asks Defendants to produce the following:

1. All documents which relate to any of the affirmative defenses which you have raised in this lawsuit.

2. All documents which relate to any of the claims which you have raised in this lawsuit.

3. All documents which identify, mention, or refer to the Plaintiff.

4. All documents exchanged between you and any party relating to the claims alleged in this lawsuit.

5. All documents exchanged between you and any non-party relating to the claims alleged in this lawsuit.

6. All documents which reflect or memorialize the present ownership of the Mark by anyone.

7. All documents which reflect or memorialize the present ownership of the FL Mark by anyone.

9. All documents which contain any representation or communication regarding the ownership (or purported ownership) of the Mark or FL Mark by anyone.

43. All documents containing statements made by parties or nonparties concerning this lawsuit or its subject matter.

D.E. 65-1 at 5, 9.

Defendants argue that these document-production requests are overly broad, and the Court

8

agrees. Some of the requests do not even seek information relevant to the claims and defenses here. *See, e.g.*, Pl.'s Req. for Produc. No. 3 (requesting all documents that *mention* Great Lakes). And those that purport to request relevant documents do so in the broadest way possible. *See, e.g.*, Pl.'s Reqs. for Produc. Nos. 1, 2 (requesting all documents relating to claims and defenses); *id.* Nos. 6, 7 (seeking all documents reflecting ownership of the marks by anyone). These requests are in no way tailored to the issues presented here and thus are not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. R. 26(b)(1). Also, given the fairly complex nature of this case, the burdens that these requests would place on Defendants outweigh any likelihood that the responsive documents would add new and useful information to the discovery record. *See* Fed. R. Civ. P. 26(b)(2)(C)(3). For these reasons, Plaintiff's Motion Compel is denied with respect to Requests for Production Nos. 1 through 7, 9, and 43.

At the hearing, counsel for Great Lakes suggested that these nine production requests could be redrafted more narrowly. Great Lakes is free to resubmit these document requests in a narrowed form. But if it does so, the Court suggests (for the reasons discussed below) that Great Lakes also narrow the terms "relate to," "relating to," and "concerning" where they appear in these requests.

**Requests for Production Nos. 10–17, 19, 20, 38**

Requests for Production Nos. 10 through 17, 19, 20, and 38 ask Defendants to produce the following documents:

10. All documents which relate to or memorialize any discussions and/or negotiations to sell, pledge, license, or transfer the Mark or the FL Mark, either individually or as part of a larger sale.

11. All documents which relate to or memorialize agreements to sell, pledge, license, or transfer the Mark or the FL Mark.

12. All documents concerning or which reflect any discussions, negotiations, or agreements to sell the Mark or lease, joint venture, or transfer an interest in the Mark, whether on an individual basis or as part of a larger transaction.

9

13. All documents which relate to or memorialize any discussions and/or negotiations regarding selling, transferring, or joint venturing any interest in the Mark.

14. All documents which relate to or memorialize any discussions and/or negotiations regarding any individuals or entities purchasing the assets of Metro Cars, Inc., either individually or as part of a sale involving other assets.

15. All documents which relate to or memorialize any offer to sell, pledge, license, or transfer any intellectual property (including but not limited to trademarks and servicemarks) owned by you or by Metro Cars, Inc.

16. All documents which reflect or memorialize any agreement to sell, pledge, license, or transfer any of the assets owned by you or by Metro Cars, Inc.

17. All documents concerning any sale, efforts to sell, negotiations, discussions, or other post-default remedies exercised by the Bank of Montreal, or any other secured party with respect to any collateral pledged by Metro Group Holding Company, Inc. or any other related or affiliated companies.

19. All documents which relate to any communications you had regarding bids at any auction sale scheduled or which actually occurred in 2009 of collateral pledged by Metro Group Holding Company, Inc. and/or any affiliated companies, including but not limited to communications with any representatives or agents of Trowbridge Partners, LLC; Jay Tredwell; and/or Dan Dickson.

20. All documents which relate to the participation of any parties including, but not limited to, any representatives or agents of Trowbridge Partners, LLC; Jay Tredwell; and/or Dan Dickson, in bids at any auction sale scheduled or which actually occurred in 2009 of collateral pledged by Metro Group Holding Company, Inc. and/or any affiliated companies.

38. All documents exchanged between you and the Bank of Montreal concerning or related to the Mark or the FL Mark.

D.E. 65-1 at 5-7, 9.

The Court notes initially that most of these document requests use the terms "relate to" or "concerning" in a way that makes the requests overbroad, vague, and ambiguous. Because these terms are broad, they might well encompass irrelevant information. *See, e.g.*, *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02-2576, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (holding that request for production seeking "all documents that relate to or concern" a particular topic was "overly broad

10

on its face"); *see also Audiotext Commc'ns v. U.S. Telecom, Inc.*, No. CIV. A. 94-2395, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995) (explaining that discovery requests worded too broadly "function like a giant broom, sweeping everything in their path, useful or not"). Nor can Defendants be certain exactly what information the discovery requests cover and therefore what information is responsive. The Court, therefore, will narrow Requests Nos. 10 through 15 by striking from them the words "relate to or" and "concerning or." In Requests Nos. 17 and 38, the Court will construe the terms "concerning" and "related to" as "disclosing or referring to." Similarly, in Requests Nos. 19 and 20, the Court will construe the phrase "relate to" as "disclose or refer to."

Defendants originally objected to these eleven document requests on various grounds. Because of the Court's narrowing of the requests, however, Defendants' counsel indicated that he would withdraw the objections, subject to a review of certain privilege issues and the development of a privilege log in response to the document requests as narrowed. Accordingly, the Court grants in part and denies in part Plaintiff's Motion to Compel with respect to Requests for Production Nos. 10 through 17, 19, 20, and 38. If appropriate, Defendants may submit a privilege log along with non-privileged responsive documents in response to the narrowed requests.

**Requests for Production Nos. 35, 42**

In Requests for Production Nos. 35 and 42, Great Lakes seeks "[a]ll documents which reflect or memorialize any damages alleged in your claims" and "[a]ll photographs, videotapes, recordings, sketches and drawings relating to the Mark relevant to the claims in this action." D.E. 65-1 at 8-9. Defendants originally objected to these production requests, primarily on grounds of overbreadth, but Defendants' counsel withdrew those objections at the hearing. For the reasons already discussed, however, the Court will narrow Request for Production No. 42 by construing the term "relating to" as "depicting." Thus, the Court grants Plaintiff's Motion to Compel with respect to Request for

11

Production No. 35, and grants in part and denies in part the Motion with respect to Request for Production No. 42.

**Requests for Production Nos. 45–47**

In Requests for Production Nos. 45 through 47, Great Lakes asks Defendants to produce the following:

45. All documents which relate to the age and condition of your vehicle fleet.

46. All documents which relate to the termination of your services in the last two years by customers with whom you had a contract to provide services.

47. All non-privileged documents which refer or relate to other lawsuits pending in the last five years in which you have been a party.

D.E. 65-1 at 9-10.  Defendants object to these requests largely on relevancy grounds, claiming also that the terms "vehicle fleet" in Request No. 45 and "services" in Request No. 46 are ambiguous.

The Court finds that, in general, these requests are relevant to Great Lakes's claim that Defendants' transportation services are inferior to Great Lakes's services and therefore that Defendants' use of the Metro and Florida marks has diluted those marks.[3]  At the hearing, Great Lakes's counsel agreed that Request No. 45 should be limited to vehicles using the marks at issue, and the Court directs that this request be so narrowed.  The Court will likewise limit Requests Nos. 46 and 47, respectively, to services and lawsuits involving vehicles using the disputed marks. In addition, the Court will limit Request No. 46 to "**transportation** services," given Defendants' claim that they offer other kinds of services.  For similar reasons, Request No. 47 shall be limited to "lawsuits **involving the provision of transportation services.**"  And, for the reasons discussed

---

[3]Defendants' counsel suggested at the hearing that the requested documents might be irrelevant for the period when the trademark-license agreement was in effect.  For purposes of the present motion, however, the Court finds that Great Lakes's dilution claim is not limited by the license agreement, which itself contains provisions requiring Yellow Cab to adhere to certain standards of quality.  See D.E. 49-2 at 2.

above, the Court construes the term "relate to" in Requests Nos. 45 and 46 as "disclose or refer to." The Court also strikes from Request No. 47 the words "or relate." Accordingly, Plaintiff's Motion to Compel with respect to Requests for Production Nos. 45 through 47 is granted in part and denied in part.

**Request for Production No. 48**

Request for Production No. 48 asks Defendants to produce "[a]ll documents which you intend to introduce at the trial of this matter." D.E. 65-1 at 10. In response to this request, Defendants stated, "Not yet determined." D.E. 63-2 at 30. The Court denies Plaintiff's Motion to Compel with respect to Request for Production No. 48 but recognizes, as the parties do, that Defendants will need to supplement their response to this request once they know what documents are responsive. *See* Fed. R. Civ. P. 26(e).

**Conclusion**

Accordingly, as set forth herein, Plaintiff's Motion to Determine Sufficiency of Objections and to Compel Discovery Responses [D.E. 63] is **GRANTED IN PART** and **DENIED IN PART**. By **Wednesday, December 22, 2010,** Defendants shall produce responsive information and documents, as well as any privilege log in response to Requests for Production Nos. 10 through 17, 19, 20, and 38.

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 8th day of December, 2010.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:   Honorable William J. Zloch
      counsel of record

13