UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80241-CIV-ZLOCH/ROSENBAUM

GREAT LAKES TRANSPORTATION
HOLDING LLC d/b/a METRO CARS,

    Plaintiff,

v.

YELLOW CAB SERVICE CORPORATION
OF FLORIDA, INC., et al.,

    Defendants.
_____/

## ORDER REQUIRING PAYMENT OF ATTORNEY'S FEES

This matter is before the Court on Plaintiff's request for reimbursement of the attorney's fees it has expended in seeking Defendants' production of the entire loan agreement between PTG Enterprises and Boathouse Capital. *See* D.E. 142 at 3-4. By Order of April 18, 2011, the Court granted Plaintiff's latest motion to compel Defendants to produce the whole loan agreement. *See* D.E. 151. In that motion, Plaintiff requested that the Court award Plaintiff its "reasonable attorneys' fees incurred in filing the numerous papers required to secure the production of the entire document." D.E. 142 at 3-4. In view of this request, the Court ordered Defendants "to show cause why the Court should not award Plaintiff the fees it has incurred in seeking to compel Defendants to produce the full loan agreement." D.E. 151 at 9 (citing Fed. R. Civ. P. 37(a)(5)(A); S.D. Fla. Local Rules app. A, pt. I.D.(4)). Having reviewed Defendants' counsel's response to the order to show cause, *see* D.E. 155, the Court grants Plaintiff's request for attorney's fees.

When a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  The court, however, may not order reimbursement of the movant's expenses if (1) the movant filed its motion to compel before attempting in good faith to obtain the discovery without court intervention, (2) the opposing party's response to the discovery request was "substantially justified," or (3) "other circumstances make an award of expenses unjust." *Id.*[1]  As explained by its drafters, this rule "*requires* that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified." Fed. R. Civ. P. 37(a)(4) advisory committee notes (1970 amend.) (emphasis added); *see Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) (noting that "[t]he rule was toughened in 1970 to mandate that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified").  Moreover, the non-prevailing party bears the burden of demonstrating substantial justification.  *See Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Grp.*, 55 F.3d 463, 466 (9th Cir. 1995), *abrogated on other grounds by Cunningham v. Hamilton Cnty.*, 527 U.S. 198 (1999); *see also Devaney*, 989 F.2d at 1163.  "The Supreme Court has clarified that [a party's] discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney*, 989 F.2d at 1163 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997).

In its April 18, 2011, Order, the Court explained in detail how Defendants had refused to produce the complete document titled "Loan Agreement By And Between PTG Enterprises, LLC

---

[1]Because Plaintiff repeatedly attempted to obtain the full loan agreement from Defendants before seeking relief from the Court, the first exception to Rule 37(a)(5)(A) is inapplicable here.

2

as Borrower and Boathouse Capital LP as Lender, Closing Transcript," even though

(1) the Court made clear at the February 1, 2011, discovery hearing that Plaintiff could amend its production requests to include the entire "closing binder" for the loan transaction and that Defendants must either file specific objections to Plaintiff's amended requests or produce responsive documents; and

(2) Plaintiff specifically requested the entire "Loan Agreement . . . Closing Transcript"—defining this document as the "Loan Agreement"—and Defendants neither objected to that request nor otherwise expressed any opposition to producing the full document.

*See* D.E. 151 at 2-3, 5-8. The April 18 Order also described how Defendants continued to avoid producing the full "Loan Agreement . . . Closing Transcript" even after the Court ordered them to do so and how Defendants repeatedly claimed that they had produced the whole document when, in fact, they had not. *See id.* at 3-5, 7-8. Eventually, it came to light that Defendants' refusal to produce the full document was based on the position—refuted by the record and the unambiguous language of Plaintiff's request—that Defendants were obligated to produce only the single tab specifically titled "Loan Agreement" of the multi-tab "Loan Agreement . . . Closing Transcript" binder and were not required to produce the remaining twenty-three tabs containing other documents central to the loan transaction. *See id.* at 5, 8.

Defendants' failure to produce the entire document requested by Plaintiff was not "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii); *see* Fed. R. Civ. P. 37(a)(4) (providing that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond"). In view of the discovery record, there was no "genuine dispute" about Defendants' production obligation, nor could "reasonable people . . . differ as to the appropriateness of [Defendants'] action" in choosing to produce only a select portion of what was plainly requested and inaccurately representing that they had fully complied with the request. *Devaney*, 989 F.2d at 1163 (internal quotation marks omitted).

In his response to the Court's order to show cause, defense counsel maintains that Defendants' discovery responses "were made with the good faith belief that the Court had Ordered production of the unredacted Loan Agreement [*i.e.*, **Tab 1** of the 'Loan Agreement . . . Closing Transcript'] with all schedules and attachments, and nothing more." D.E. 155 at 1-2 (alteration & emphasis added). Counsel offers various justifications in support of this belief. After carefully considering all of counsel's arguments, the Court finds them unpersuasive. The Court will briefly discuss the main justifications offered by counsel.

Quoting selectively from the transcript of the February 1, 2011, hearing, defense counsel suggests that the Court's rulings concerning Defendants' production obligations applied only to documents contained in the Tab 1 of the "Loan Agreement . . . Closing Transcript." *See id.* at 5-8. Counsel further claims that production of "the entire closing binder . . . was not a position taken by either party during the February 1, 2011 hearing." *Id.* at 12. The hearing transcript, however, belies counsel's position. The discussion between the Court and counsel at the hearing, as well as the Court's rulings, did include certain documents within Tab 1, since Defendants had produced only selected parts of those documents. But most of the discussion at the hearing regarded Defendants' production of the other twenty-three tabs of the closing binder. *See* D.E. 151 at 5-6 (summarizing this discussion and the Court's rulings). Indeed, the Court, Plaintiff's counsel, and Defendants' counsel all expressed the understanding that Plaintiff would request the entire closing binder, which housed the complete "Loan Agreement . . . Closing Transcript." For example, the following exchange occurred between Court and defense counsel:

> MR. CAMILLO:   What exactly is it that I am being requested to provide, Judge? **The closing binder in its entirety?**
>
> THE COURT:   **That's my understanding,** and any documents that reflect conversations or communications leading up to the closing document binder.

4

D.E. 152 at 44-45 (emphasis added).  Further, in requesting that any documents responsive to Plaintiff's amended requests be produced confidentially, defense counsel stated as follows:

> MR. CAMILLO: And, Your Honor, **after I go through the closing binder**, I would ask that because I don't think there are things that are relevant, and I certainly don't think or I don't want to come back here and ask the court for a confidentiality order.
>
> I would ask that anything we haven't produced heretofore **that is part of the closing binder** that I don't think was encompassed in the request that I do produce—
>
> THE COURT: Be subject to the confidentiality order?
>
> MR. CAMILLO: Yes, ma'am.

*Id.* at 51 (emphasis added).

Defense counsel also contends that he believed that Defendants' production obligation did not include the entire closing binder because "many of the documents described in the [Closing Document] Index had previously been ruled not discoverable by the Court." D.E. 155 at 12.  This argument refers to a document request in a subpoena that Plaintiff served on Boathouse Capital, seeking various documents reflecting the ownership and structure of PTG Enterprises. *See* D.E. 82-1 at 10 (Request No. 6).  Counsel asserts that "[t]he Court sustained Boathouse's objection to the production of these documents," which he claims are also contained in Tabs 15 through 18 of the closing binder.  D.E. 155 at 8.  But even assuming that (1) the documents requested in the subpoena are the same documents contained in the closing binder and (2) Defendants' discovery obligations with respect to these documents were the same as Boathouse Capital's obligations, counsel's assertion that the Court ruled these documents nondiscoverable is simply not correct.  To the contrary, the Court denied Defendants' motion for a protective order regarding these documents, finding that the subpoena request was "within the broad scope of discovery permitted under Rule

5

26." D.E. 121 at 10.[2]

Defense counsel also argues that while the Court's March 2, 2011, Order required Defendants to "'produce the entire loan agreement as specified in Plaintiff's amended production request,'" the Court "did not order the Defendants to produce the entire Closing Binder." D.E. 155 at 10 (quoting D.E. 135 at 2). This argument ignores that Plaintiff's amended request expressly defined "the 'Loan Agreement'" as "[t]he entire document titled 'Loan Agreement By And Between PTG Enterprises, LLC as Borrower and Boathouse Capital LP as lender, **Closing Transcript**' dated September 16, 2010." D.E. 133-1 at 5 (emphasis added). In further explication of this term, Plaintiff's amended request expressly included "without limitation, all schedules, attachments, exhibits, appendices, annexes, **tabs**, and other documents incorporated into or referenced or referred to" in what Plaintiff had just defined as the "Loan Agreement"—in other words, the "Loan Agreement . . . Closing Transcript." *Id.* (emphasis added). Therefore, Plaintiff's request—and, by reference, the Court's Order—plainly included the whole closing binder.[3]

---

[2]Although defense counsel quotes preliminary comments that the Court made at the February 1 hearing with respect to this request, *see* D.E. 155 at 8, the Court ultimately took the issue under advisement. *See* D.E. 152 at 76. And, in its subsequent written Order, the Court ruled that the requested documents were discoverable. *See* D.E. 121 at 10.

[3]Counsel further argues that the "Loan Agreement . . . Closing Transcript" is "merely an index to the documents contained in the Closing Binder." D.E. 155 at 12; *see id.* at 4 (asserting that "the closing binder was a compilation of separate documents, and the 'Transcript' is merely an index to the documents contained within the closing binder"). The documents in the record do not support this claim. The cover page for the document titled "Loan Agreement . . . Closing Transcript" includes what appears to be the date the document was finalized and the name of the firm responsible for its preparation. *See* D.E. 142-2 at 1. Following this cover page is a five-page index that bears a different title: "Closing Document Index." D.E. 142-2 at 2-6. This arrangement indicates that the "Loan Agreement . . . Closing Transcript" and the "closing binder" are the same document and that the "Closing Document Index" lists the contents of that document. Even if counsel's position were correct, however, the amended request clearly seeks "all schedules, attachments, exhibits, appendices, annexes, **tabs**, and other documents incorporated into or referenced or referred to in" the "Loan Agreement . . . Closing Transcript." D.E. 133-1 at 5 (emphasis added). Moreover, any reasonable person would construe Plaintiff's request for the "Loan Agreement . . . Closing

Finally, the Court notes that in view of Plaintiff's clear request for the closing binder in its entirety, under the express terms of the Court's February 4, 2011, Order, Defendants could have chosen to object. *See* D.E. 121 at 7. Indeed, the Court had pre-set a hearing on any objections that Defendants might have had to the amended requests. *See id.* Instead, however, Defendants chose to forgo objections and represent complete compliance with the amended requests. Defendants' repeated representations in this regard were, quite simply, not accurate.

In sum, Defendants have not shown that their refusal to produce the entire "Loan Agreement . . . Closing Transcript" was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii); *see Telluride Mgmt. Solutions*, 55 F.3d at 466. Nor do "other circumstances make an award of expenses unjust" here. Fed. R. Civ. P. 37(a)(5)(A)(iii). As discussed in the Court's April 18 Order, Defendants' avoidance of their obligation to produce the complete loan agreement required Plaintiff to file multiple documents seeking relief from the Court. In response to Plaintiff's filings, Defendants inaccurately claimed that they had produced the full document and, when faced with the evidence presented in Plaintiff's latest motion to compel, advanced a position that lacked support in the record. Moreover, as already discussed, none of the explanations offered in defense counsel's show-cause response are viable. Thus, the rule requires the Court to award reasonable attorney's fees in these circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A).

Accordingly, the Court **GRANTS** Plaintiff's request for reimbursement of the attorney's fees it has expended in seeking to compel Defendants to produce the entire loan agreement. In defense counsel's response to the order to show cause, counsel forthrightly states that he, rather than Defendants, is "responsible for the production of the Loan Agreement." D.E. 155 at 1. Given

---

Transcript" as seeking the closing binder itself, especially since Defendants had already produced the index.

counsel's acknowledgment of responsibility for the discovery conduct at issue here, the Court **ORDERS** Defendants' counsel to pay the attorney's fees that Plaintiff has incurred in seeking production of complete loan agreement. *See* Fed. R. Civ. P. 37(a)(5)(A) (authorizing the court to order "the party *or attorney* advising [the] conduct" that necessitated a motion to compel to pay the attorney's fees incurred in making that motion (emphasis added)); *Devaney*, 989 F.2d at 1160 (observing that Rule 37 "permit[s] the court to impose sanctions upon a party or its attorney or both and establish[es] no preference between these options"). Specifically, this includes only those fees incurred by Plaintiff in seeking to compel disclosure of the entire "Loan Agreement . . . Closing Transcript" after Defendants filed their February 7, 2011, Notice of Compliance [D.E. 122]. The parties' attorneys shall agree on the amount of these fees, and, **by July 3, 2011,** Defendants' counsel shall pay the agreed-upon amount to Plaintiff. If the parties cannot agree on the amount of fees, Plaintiff shall file a motion with the Court detailing its fee request, and Defendants' counsel may respond to that motion.

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 4th day of May, 2011.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc: Hon. William J. Zloch
Counsel of record